# NIGHTINGALE v. SCANNELL et als.

A GENERAL objection to evidence is not good, unless the evidence objected to be absolutely incompetent, in which case such general objection is available.

*Kiler* v. *Kimball*, (10 Cal. 267) *Martin* v. *Travers*, (12 Cal. 243) and *Waters* v. *Gilbert*, (2 Cush. 27) as to pointing objections, commented on.

The rule giving vindictive or exemplary damages in cases of malicious trespass, applies as well to officers of the law, acting under color of process, as to private persons.

*Phelps* v. *Owens*, (11 Cal. 22) as to damages against officers, commented on.

In suit against a Sheriff and the plaintiff in a judgment for a wrongful seizure of property on an execution upon such judgment, the Sheriff, who acted without improper motives, cannot be made liable in vindictive or exemplary damages on account of the malicious motives of the plaintiff in the writ. The motives of plaintiff cannot be given in evidence in aggravation of damages against the Sheriff.

In such a suit—the property seized being a merchant's stock in trade—evidence of the *retail value* of the goods is inadmissible as a basis for damages. The object of such evidence is to estimate the profits plaintiff might have made by a sale of the goods; and this would be mere conjecture. The value of the goods was what it would cost in the market to replace them.

There may be cases in which damages may be based upon a calculation of profits; but this is not one of them. There was no sufficient data for a calculation of profits.

Defendant Scannell, as Sheriff, levies upon and sells under execution on a judgment in favor of *Crowther* v. *Gilbert*, the undivided half interest in the stock in trade of McCombe & Nightingale, merchants. Crowther buys in the property. Nightingale, claiming to be owner of a one-third interest in the property, sues the Sheriff and Crowther for damages, for a malicious trespass. Defendants asked the following instruction : "If the jury find that the goods named in the complaint were not taken into possession by Crowther after the purchase by him at the Sheriff's sale on the eighth of October, 1856, but that the same were recaptured by McCombe & Nightingale, then no damages should be awarded as for the value of the property or any part of it; and a recapture by McCombe alone would, in legal effect, be a recapture on the joint account of himself and Nightingale : " *Held*, that this instruction ought to have been given ; and that it was immaterial whether the recapture was before or after the commencement of this suit, or how it was effected.

APPEAL from the Fourth District.

Action for damages for the seizure and conversion of oil, tallow, camphene fixtures, and various implements connected with an establishment for the manufacture of camphene in the city of San Francisco.

Nightingale *v.* Scannell.

The complaint avers that plaintiff was, on the first of October, 1855, the owner of an undivided third of the property abovenamed, in the "store occupied by the late firm of Gilbert & McCombe," where plaintiff and McCombe were doing business; that defendants Scannell and Crowther seized and converted this stock in trade, worth $2,649.30, thereby destroying plaintiff's business, depriving him of his income and only means of support, and ruining his credit and reputation as a merchant; that the trespass was "willful and malicious, in defiance of the most earnest remonstrances of this plaintiff, with full notice of his rights, and an apparent determination to destroy his business and accomplish his ruin;" that McCombe refuses to be party plaintiff, and is therefore made defendant. Prayer for $10,000 as plaintiff's proportion of the damages sustained.

The facts seem to be as follows: In May, 1855, defendant, McCombe, and Rosanna Gilbert entered into a copartnership for carrying on the business of a camphene, oil and turpentine manufactory under the firm name of Gilbert & McCombe. She was a sole trader under the statute, and the wife of George S. Gilbert, who seems to have personally attended to the manufacture of the camphene, etc. On the twenty-second of August, 1855, Rosanna sold her half interest in the concern to McCombe, taking his notes for $1,500, he assuming the debts. This sale was evidenced by a bill of sale executed by George S. Gilbert, the husband, as her attorney in fact. She testifies that she authorized her husband to make the sale for cash only, and for the sole purpose of raising money to pay Crowther, who had loaned her the money which she put into the partnership at its formation. Crowther was aware of this sale, having been notified of it at the time. On the thirty-first of August following, Nightingale, plaintiff here, bought of McCombe a one-third interest in the business, in payment of which he credited a note to him of the old firm of Gilbert & McCombe for $2,682.25, dated August 20th, 1855, with $1,769.71. From this time, Nightingale was at the store of the firm, having charge of the books, receiving the money, etc. Gilbert, the husband, was also there at work as usual, and the sign of Gilbert & McCombe over the door, and their names on the wagon of the house, were not removed. On the eighteenth of September, 1855, Crowther brought suit against

Rosanna on her note to him for $1,464, with interest, dated May 19th, 1855, issued an attachment and had it levied on her half interest in the stock in trade of said firm, holding that her sale to McCombe was a fraud. The writ was levied by Graham, Scannell's predecessor. Judgment having been obtained, an execution issued on the first of October following, and put in the hands of defendant Scannell, then Sheriff; he levied it on the goods already seized under the attachment, and on the eighth of that month sold the half interest of Rosanna to Crowther for five hundred dollars. From the seizure under the attachment to the sale the business of the concern was stopped. On the tenth of the same month, Nightingale began the present suit for damages. On the nineteenth of that month, McCombe began suit against Crowther, averring in substance that Crowther having purchased the interest of Rosanna Gilbert, which really was nothing, claimed the right to interfere with McCombe's possession of the goods, and threatened to remove and sell them; that if the sale to him, McCombe, was a fraud and void, then the goods should be applied to the payment of the partnership debts of the old firm of Gilbert & McCombe before they could go to the individual debts of Rosanna. The complaint prayed that an account be taken of the partnership; that a receiver be appointed, etc.; that the sale from Rosanna to McCombe be decreed valid, or if held fraudulent, then that the partnership effects be first applied to firm debts, etc.; and that Crowther be enjoined from interfering with the goods. The injunction was granted upon the usual bond. Whether the receiver was appointed does not appear. McCombe being thus in actual possession of the goods through this suit, or at least of a part of them, as respondent contends, sold a portion to one Metz, who passed them over to Scott & Co., for whom he had probably bought them. Metz gave McCombe two notes for the purchase money—one of three hundred dollars, the other of five hundred dollars. These notes were to the order of McCombe, but were paid to Nightingale, he endorsing the amount, October 19th, 1855, on his note against the firm of Gilbert & McCombe before mentioned. This sale by McCombe to Metz, and payment of the notes to Nightingale, and the proceedings in the suit of *McCombe* v. *Crowther* constitute the evi-

dence of recaption of the goods. Nightingale, though about the store before and after the Sheriff's sale, does not appear to have taken any part in the management of the property after it was attached. The store was closed up about twenty days.

The defendants justified the seizure and conversion under an execution on a judgment in favor of defendant Crowther against Rosanna Gilbert; Scannell acting as Sheriff in the matter of the levy, and seizing and selling Rosanna's interest only. The main questions litigated at the trial were the title of Rosanna and the damages.

It was insisted, on the part of the plaintiff, that Rosanna and McCombe were original partners, and owned the property jointly, which was not disputed by the defendants in evidence; and that before the levy by defendant Crowther, Rosanna sold out to McCombe.

Admitting that the forms of sale had been gone through with, the defendants contended that the sale was fraudulent in law as to the creditors of Rosanna, for the reason that she continued in possession jointly with McCombe.

Plaintiff further insisted that McCombe sold a one-third interest in the property to the plaintiff Nightingale. Defendants contended that that fact was not made out on the plaintiff's own evidence; or if made out, then that a half interest in the property still remained liable to be levied on by the creditors of Rosanna, for that she still possessed the property jointly with McCombe and Nightingale.

As to damages, the defendants insisted that none could be given for injury to the business, and that none could be given as for the value of the property, for the reason that it had been recaptured.

The record as to the way in which the objection as to the retail value of the property was made, runs thus: "Question. What was the retail market price of lard oil at and about the first of October, 1855?" "The counsel for defendants here objected to the question, but the Court overruled the objection and admitted the question. To which ruling the counsel for defendants then and there excepted." This question was put by plaintiff to one of his witnesses.

Defendants asked the following instruction to the jury, which was refused:

"If the jury find that the goods named in the complaint were not taken into possession by Crowther after the purchase by him at the Sheriff's sale on the eighth of October, 1856, but that the same were recaptured by McCombe and Nightingale, then no damages should be awarded as for the value of the property or any part of it; and a recapture by McCombe alone would, in legal effect, be a recapture on the joint account of himself and Nightingale." Verdict and judgment against Scannell and Crowther for $5,000 damages. They appeal.

*O. L. Shafter & S. Heydenfeldt*, for Appellants.

1. In actions for the conversion of personal property, plaintiff is entitled to recover the value of the property, and in addition thereto, vindictive damages, if the injury was wanton or malicious. This value must be the wholesale market value in cases like the present.

2. The fact of retail value was incompetent to be proved in any form or mode; and therefore, a general objection to the evidence of such value was sufficient. (*Van Arsdale* v. *Howard*, 5 Ala. 599; *Merritt* v. *Seaman*, 2 Seld. 171.)

3. The instruction asked by defendants as to the effect of recaption was correct, and the Court below ought to have given it. If both McCombe and Nightingale recaptured the goods, neither could recover for the value. (Sedg. on Dam. 492.) There was evidence tending to prove such joint recaption. (5 Vt. 100.) And if the recaption was by McCombe alone, it would enure to plaintiff's benefit; it would be a recaption on their joint account. The seizure and sale by the Sheriff did not divest their joint title.

4. Scannell acted as Sheriff purely, and there is no evidence tending to show any malice or oppression on his part. Hence no vindictive damages can be recovered against him; and as the object of the evidence of the retail value of the goods was to obtain such damages, the evidence was inadmissible as against Scannell. He cannot be liable for the malice of Crowther. (Sedg. on Dam. 79–82; *Pacific Ins. Co.* v. *Conrad*, 1 Baldwin, 138; *Phelps* v. *Owens*, 11 Cal. 22; *Butler* v. *Collins*, 12 Id. 457.)

*Hall McAllister*, for Respondent.

1. Where the goods of a retail dealer have been wrongfully converted by another, the former, in an action against the latter, may show to the jury the retail value of the goods, not as the necessary measure of his damages, but as a proper *datum* to be submitted to the jury upon the subject of damages—especially where, as in this case, the complaint avers injury to "the business" of plaintiff. (*Milburn* v. *Beach*, 14 Mo. 106.)

2. Even if evidence of the retail value of the property here was incompetent, still no proper objection was taken to its admission. The point of the objection nowhere appears. (*Merritt* v. *Seaman*, 6 Barb. 335; Prac. Act, secs. 188, 189; *Martin* v. *Travers*, 12 Cal. 245; *Kiler* v. *Kimball*, 10 Id. 208; *Covillaud* v. *Tanner*, 7 Id. 38; *People* v. *Glenn*, 10 Id. 32; *McGarrity* v. *Byington*, 12 Id. 429; *Paige* v. *O'Neil*, Id. 483; *Waters* v. *Gilbert*, 2 Cush. 31.) The case of *Merritt* v. *Seaman*, (2 Selden, 171) overruling the same case in 6 Barb., is not law, and the New York code contains no provision like ours as to the mode of taking exceptions.

3. The instruction asked by defendants, as to the effect of a recapture of the goods by McCombe & Nightingale, was not law, because it excludes all inquiry as to the condition of the goods at the time of their recaption; also, as to the deterioration of the goods between the time of the seizure and the recaption; also, as to any injury which may have been inflicted upon the goods between the times last mentioned; also, as to any change in the market value of the goods—which every article of merchandise, in a fluctuating market like San Francisco, constantly undergoes—during the same period, and precludes the jury from adopting, should they see fit so to do, the just and well established practice of taking, as the verdict value of the goods—so to speak—their value at the time of the conversion, with interest on such value superadded. (*Woodbarn* v. *Gelston*, 1 Johns. 134; 1 Baldwin, 142; *Hopple* v. *Higbee*, 3 Zabriskie, 347; Mayne on Damages, 222, [top 206]; *Greening* v. *Wilkinson*, 1 Carr. & P. 625; *Douglas* v. *Kraft*, 9 Cal. 563; *Doughty* v. *Hope*, 3 Denio, 599; 1 Comst. 79.) The

authority cited by appellants from Sedgwick refers to "Mitigation of Damages in Trover," and the rule of damages in such action differs entirely from the rule in trespass.

This instruction was also wrong because there was no evidence tending to prove a recaption of the goods. The recaption was of the *proceeds* of the goods, and not the goods themselves; and the proceeds of *part* of the goods and by McCombe alone. (20 Ill. 485; 42 Me. 564; 22 Mo. 409; 8 Md. 131; 27 Mo. 26; 18 Ga. 411; 5 Mich. 368; 14 Pick. 356.) Further, the recaption was after the commencement of this suit, and therefore should not be regarded. The rights of the parties must depend upon their *status* at that time.

4. The Sheriff in this case was a wrong-doer, did not act simply in the fair discharge of his official duties, was not impartial between the parties, and hence is liable in exemplary damages, just as a private person. (*Milburn* v. *Beach*, 14 Mo. 106; *Gregory* v. *Cotterell*, 22 Law Jour. 1853, Com. Law, 217; *Duke of Brunswick* v. *Slowman*, 8 Mann, Grang & Scott, 317; *Joyal* v. *Barney*, 20 Verm. 159; *Ayer* v. *Bartlett*, 9 Pick. 156; *Tracy* v. *Swartwout*, 10 Pet. 95; *Brewer* v. *Dew*, 11 Mees. & Wels. 625.)

5. If the rule of damages against Sheriffs were, as appellants contend, to allow simply the value of the property with interest, the rule would not apply here, because the complaint charges a joint trespass against Crowther & Scannell, and they justify jointly. In such case, the same rule of damages applies to both defendants; and the jury are to estimate the damages according to the amount the most culpable party ought to pay. (*Phillips* v. *Biron*, 1 Strange, 509; *Smith* v. *Dr. Bouchier*, 2 Id. 993; *Middleton* v. *Price*, Id. 1184; *Earl of Manchester* v. *Vale*, 1 Saunders, 28, Note 2 of Serjeant Williams on this case; *Duffield* v. *Scott*, 3 Term, 376, 377; Watson on Sheriffs, 7 Law Library, old series, 85, 62; *Gleason* v. *Edmunds*, 2 Scam. 448; *Brown* v. *Allen*, 4 Esp. 158; *Crawford* v. *Morris*, 5 Gratt. 101; *Clark* v. *Bales*, 15 Ark. 458; 2 Greenl. Ev. sec. 277; *Layman* v. *Hendrix*, 1 Ala. 212; *Allen* v. *Craig*, 1 Green, 294.)

*Geo. F. & Wm. H. Sharp*, also for Respondent.

Nightingale *v.* Scannell.

1. A Sheriff who willfully acts contrary to the law while in the discharge of his duties, is liable in vindictive damages. (*Duke of Brunswick* v. *Slowman*, 8 Man. Gr. & Scott, 317; *Joyce* v. *Barney*, 20 Vt. 124; 14 Mo. 105; *Ayers* v. *Bartlett*, 9 Pick. 160; *Lindsley* v. *Bushnell*, 15 Conn. 229; 1 Dev. & Batt. 440; 3 Cal. 440.) Scannell knew Rosanna Gilbert had no interest in the property seized, and permitted himself to be made the mere tool of Crowther.

2. The instruction as to recaption was properly refused. There was no evidence at all tending to show a joint recaption. After the taking by appellants, respondent never had any possession of or any benefit from the property. Crowther became the purchaser at the sale. All joint possession was broken up and destroyed by this very trespass.

The respondent completely abandoned the property to the wrong-doers, as he might lawfully do after the taking.

If the property was recaptured by McCombe after the sale, and the recaption could be on the joint account of any one, it would be on the joint account of himself and Crowther—the purchaser at the sale—so that under no circumstances were appellants entitled to the instruction asked. But there is another answer, conclusive in itself—no recaption is pleaded.

3. Plaintiff had a right to prove the retail value. (*Coolidge* v. *Choate*, 11 Met. 79.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The complaint in this case charges the defendants Scannell and Crowther, with the seizure and conversion of certain goods and chattels belonging to the plaintiff and one McCombe. McCombe, refusing to unite with the plaintiff in bringing the suit, was made a defendant, in accordance with the fourteenth section of the Practice Act. The trespass is charged to have been committed willfully and with malicious motives, and various matters are set forth in the complaint as grounds of special relief. The complaint states, among other things, that the plaintiff and McCombe were merchants, and that the property taken constituted their stock in trade; that

Nightingale *v.* Scannell.

in consequence of the taking their business was broken up and destroyed, and that the plaintiff was greatly injured in his credit and reputation as a merchant.    Ten thousand dollars are claimed as his proportion of the damages, and the suit is brought for the recovery of that sum.

On the trial of the case, the plaintiff, in proving the damages, was allowed by the Court to give in evidence the retail value of the goods; the defendants objecting in general terms to the introduction of this evidence.    The action of the Court in that respect is assigned as error; but the plaintiff claims that if an error was committed, the defendants are not in a situation to take advantage of it.    He contends that a general objection is not sufficient to support the assignment, and that in all cases a specification of the grounds of an objection is necessary to render it effectual.    The defendants claim that the evidence was not admissible for any purpose, and that a statement of the grounds upon which it was objected to would have been superfluous, and was not therefore required.    This view is based upon what appears to us to be the proper rule in such cases, and we see no good result to be accomplished by holding parties to a more strict and rigid practice in these matters.    The Practice Act provides that where an objection is made and an exception taken, the point of the exception shall be stated; but it does not follow that a general objection to the admission of incompetent evidence is not sufficient.    On the contrary, the incompetency of the evidence sufficiently indicates the ground of the objection, and the point of the exception is as clearly perceptible as if it were expressed in words.    We do not understand the provision referred to as requiring anything more than that the point of the exception shall be so stated as to be apparent to the Court; and whether it be stated in express terms or appear by necessary implication from the nature and subject matter of the objection is immaterial.    There is no doubt that a general objection to the introduction of evidence will not be available, unless the evidence objected to is absolutely incompetent; but where that is the case, we do not see upon what principle such an objection could be held to be insufficient.    Nothing more is required to put the adverse party upon notice that the competency of the evidence is called in

question; and if an error intervene on account of its admission, we think the generality of the objection should not be received as an answer. The authorities cited on behalf of the plaintiff are not analogous to the present case, but essentially different, both in their circumstances and the principles involved. It is true, this Court, in *Kiler* v. *Kimball*, (10 Cal. 267) laid down the rule, that to entitle an objection to notice, its point must be particularly stated; but the objection there was to the admission of a bill of sale. the absolute incompetency of which did not appear. So in *Martin* v. *Travers*, (12 Cal. 243) the Court said: "The objection fails to specify the point upon which it rests, and does not merit consideration for its generality;" but the principle involved was the same as in the former case. In *Waters* v. *Gilbert*, (2 Cush. 27) it was contended that a memorandum attached to a deposition had been improperly read as a part of the deposition, but the Court said: "No specific objection was taken to the use of this memorandum, and a general objection to the use of the deposition is not equivalent." The inference is, that an objection in the same form confined to the memorandum alone would have been held sufficient. In *Merritt* v. *Seaman*, (2 Selden, 168) the rule adopted by us in this case was laid down and acted upon by the Court of Appeals of New York. A general objection had been taken to the introduction of evidence, and it was held that, as the difficulty could not be obviated, such an objection was all that was necessary. The same point precisely is presented in this case, and we think there is nothing in reason or propriety calling for a different determination. The evidence, say the defendants, was not admissible for any purpose; and if that be correct, the difficulty could not have been obviated, and the objection was sufficient. This brings us to the question of the admissibility of the evidence.

The defendants are sued as joint trespassers, and the same circumstances of aggravation are charged against both. Their defense is, that the property belonged to one Rosanna Gilbert, and that they took it under an attachment against her in favor of Crowther; Scannell being the officer who executed the writ. It is admitted that the evidence complained of would not have been competent, if the case had been free from circumstances entitling the

Nightingale *v.* Scannell.

plaintiff to exemplary damages, and the most that seems to be claimed is that it was properly submitted to the jury to enable them to exercise intelligently their discretion in relation to the damages to be allowed beyond the actual value of the property, with interest. But it is contended that as against Scannell, this value constituted the sole measure of relief; and that under no circumstances can exemplary or vindictive damages be awarded against an officer for an act done in the discharge of his official duties. If by this is meant that every act committed by an officer under color of process is to be considered for the purposes of relief without reference to the motives which prompted it, we cannot assent to the proposition, and it has, we think, no support in the previous decisions of this Court. The case of *Phelps* v. *Owens*, (11 Cal. 22) is relied upon as authority to that effect, but such has never been our understanding of the doctrine laid down in that case. The decision was placed expressly upon the ground of the absence of any circumstance of malice or oppression, and there is nothing in the opinion which justifies the inference that such a circumstance would have been regarded as immaterial. We had occasion to examine the law upon this subject in *Dorsey* v. *Manlove*, (14 Cal. 553) and we see no reason to be dissatisfied with the views there expressed. We think an officer is no less responsible for the consequences of a malicious act than a private person, and the effect of a different rule would be to turn loose upon every community a set of licensed wrong-doers. In the present case, the malicious character of the act is distinctly charged, and if the facts disclosed by the record were sufficient to sustain this charge, we should have no difficulty in holding the case to be a proper one for exemplary damages. But we are unable to discover any proof supporting the charge as against Scannell, nor can we find in the record a single fact from which it can reasonably be inferred that his conduct was influenced by any improper motive. As against Crowther the evidence appears to be conclusive, but it is clear that Scannell cannot be made the victim of his malice, and visited with the consequences of a motive to which he was a stranger. The plaintiff claims that the rule in such cases is different, and that the damages are to be estimated according to the amount

which the most culpable party ought to pay.   There are no doubt cases in which this is the only practicable rule, but it is evident that the case at bar does not belong to that class.   There is no case in which it has been held that the motives of one person might be given in evidence in aggravation of damages against another. "It is difficult," said Pollock, C. B., in *Clark* v. *Newsam*, (1 Exch. 130) " to say that there are no cases in which the motives of the parties would be important, still I think it would be very unjust to make the malignant motive of one party a ground of aggravation of damage against the other party, who was altogether free from any improper motive.   In such case the plaintiff ought to select the party against whom he means to get aggravated damages."   We might safely rest the determination of the case upon this point, but we are satisfied that in any view which can be taken of the matter the evidence objected to was incompetent.   The object was to recover damages on account of the profits which the plaintiff might have realized upon a sale of the goods.   There may be cases in which it would be proper to award damages upon the basis of a calculation of profits, but in this case there were no data for the calculation to proceed upon.   The subject was so involved in uncertainty that it was impossible for the jury to be informed of all the circumstances necessary to enable them to arrive at a correct conclusion.   There was no criterion by which an estimate could be made, and the least that can be said is that the calculation must have proceeded upon conjectures and not upon facts.   Besides, the most that the plaintiff could claim was the right to show the value of the business which he alleged had been broken up and destroyed.   This value depended upon the general profits of the concern, and not upon the profits which might have been realized from the sale of these particular goods.   But in any view of the case, the impossibility of showing what these profits might have been was sufficient to preclude the introduction of evidence upon the subject.

We are of opinion that the instruction asked in regard to the recaption of the goods should have been given.   The recapture by McCombe inured to the benefit of the plaintiff to the extent of his interest, and damages for the value should not have been allowed.

In this respect, the case falls within the principle laid down by this Court in *Kimball* v. *Gearhart* (12 Cal. 27).     It is immaterial whether the recaption was after or before the commencement of this suit, or in what manner it was effected.     The trespass did not divest the title, and when McCombe acquired possession of the property he held it for the plaintiff as well as himself.     They owned it in partnership, and the possession of one was the possession of the other.     The evidence was admitted without objection, and under the stipulation dispensing with an answer we cannot disregard it.

Judgment reversed and cause remanded for a new trial.