### DAVID SMITH v. C. W. HOLLAND.

#### (No. 6905.)

APPEAL from Brown County. Opinion by DAVIDSON, J.

SCOTT, JENKINS & MCCARTNEY, counsel for appellant.

CHARLES ROGAN and THOMAS MAYES, counsel for appellee.

§ 251. *Justice of the peace; liability of for illegally issuing process; damages, etc.; case stated.* This suit originated in the county court of Brown county. On January 1, 1889, appellee, who was plaintiff below, filed his second amended original petition, in which he alleges that appellant was justice of the peace of precinct No. 4, of Brown county, from the 17th day of April, 1886, to May 25, 1886; that during said time one M. Henderson was the qualified constable of the same precinct. He alleges, also, that on April 17, 1886, A. M. Giddens sued him in said justice court of precinct No. 4, and caused a writ of sequestration to be issued and levied upon about twenty head of cattle, the property of appellee; that appellee replevied said cattle by executing a replevin bond, which was accepted by said Henderson. On May 15,

1886, the cause came on for trial, and Giddens recovered a judgment against appellee for possession of the cattle, and, in the event the cattle were not delivered in accordance with the requirements of said judgment, Giddens was to recover the sum of $100. From this judgment an appeal was taken by appellee to the county court. An appeal bond was taken and approved by appellant as justice of the precinct on May 15, 1886. This appeal bond was insufficient in amount, and on July 15, 1886, was supplanted by another bond in the county court. On May 22d, seven days after the justice court adjourned, appellant issued a "writ of restitution" to M. Henderson, the constable, who took possession of the cattle, and returned same to Giddens. Appellee alleges that he was deprived of the "product and possession" of said cattle from May 22 to October 15, 1886, to the value of $350. It is further alleged that appellee was deprived of the care, management and control of said cattle, and that they were neglected, and not properly cared for, by reason of which they were damaged in the sum of $50. It is also alleged that thirteen head of these cattle had deteriorated in value from $12 per head to $7, and that appellee had been deprived of an opportunity to sell the same. He still further alleges that appellant, as justice of the peace, did wrongfully and maliciously, and without probable cause, issue the said "writ of restitution, and cause said Henderson, the constable, on the 25th day of May, 1886, to levy upon and seize said cattle, and take them from his possession, to his great injury, to wit, in the sum of $500." Appellant denied all the allegations contained in appellee's petition. He further denied that appellee was in the possession, or entitled to the possession, of the cattle, and he denied that the "writ of restitution" was issued maliciously, with intent to injure appellee, or was issued without probable cause. The appellant alleged that, in both the justice and county court, Giddens obtained a judgment against appellee for actual

and exemplary damages for the unlawful and malicious seizure and detention of the cattle in question from him, the said Giddens, and that said judgment was final as to appellee's right of possession of said cattle during all the time from May till October 15, 1886, and that the right of possession was in Giddens during that time. Appellant further pleaded that he issued the writ of restitution in his judicial capacity, and in the exercise of his discretion as a judicial officer, in a cause in which he had exclusive jurisdiction. The evidence shows that the replevy bond was not in accordance with the terms of the statute, and therefore was not a valid replevy bond. [Haile v. Oliver, 52 Tex. 446.] It was a good bond for the forthcoming of the cattle, and could have been enforced at the suit of the officer taking same. The evidence shows that the appellee had leased the cattle to one McWhorter. The lease contract was terminated October 15, 1886, and he agreed to the lease from McWhorter to Giddens. This was an admitted fact. This state of the case put the right of possession of the cattle in Giddens, and the facts also sufficiently show that appellee, without authority, took possession of the cattle, and out of this seizure of the cattle grew the suit between himself and Giddens, in which suit Giddens recovered his aforesaid judgments. These judgments established the fact that appellee was a trespasser in so far as his caption of the cattle from Giddens was concerned, and it established the further fact that Giddens was entitled to the cattle until October 15, 1886. Upon this phase of the case the appellant asked the court to charge the jury that, if they found that the right of possession of the cattle was not in plaintiff, but that such right of possession was in Giddens, then they would not find for appellee for the value of the use of the cattle during the time mentioned, from May 25 to October 15, 1886. This charge was refused. In this ruling the court erred. The charge should have been given.

§ 252. *Damages; party who neither owns nor has the right of possession, not entitled to as the value of the use of cattle.* Again, the appellant requested special instructions to the effect that if at the time of the issuance of the writ of restitution complained of, and which formed the basis of appellee's action, the cattle levied on thereunder were not the property of appellee, the jury would find for the appellant. He further requested that a charge be given to the effect that if subsequent to the institution of the suit of Giddens v. Holland (appellee), and before the levy of the writ of restitution, the appellee had sold the cattle to his son Marion Holland, and given him the right·of possession of the same, then the appellee would not be entitled to the value of the use of the cattle while the right of such possession remained in Marion Holland. All of the charges were refused. Giddens was entitled to the possession of the cattle by virtue of his lease contract. The two judgments against the appellee established that right. The issue in the sequestration suit between Giddens and the appellee was the right of possession of the cattle levied on under the writ of restitution. By the testimony it is also shown that at the time of the levy of the writ of restitution, and prior thereto, the appellee had executed·or made a bill of sale to the cattle to his son T. M. Holland, and had delivered the cattle to him, while he himself had moved away from the county. Appellee testifies that when he left the county, or rather when he went to Duffau, he placed the cattle with his son T. M. Holland, and gave him a bill of sale to the cattle. This was before the cattle were replevied. Marion Holland, the purchaser, testified to the same effect, and also that he had full control of the cattle. It was shown, also, that all along, from April to October, appellee denied ownership in the cattle for himself, but claimed ownership in the son. This was testified to by appellee, T. M. Holland, appellant, Byrd Smith, A. E. Noel and W. J. Evans. The cattle were finally sold in October to

satisfy a judgment against appellee in favor of Noel & Evans. T. M. Holland and appellee both asserted the title to the cattle to be in T. M. Holland after the execution in favor of Noel & Evans had been levied on them. There was never any assertion of ownership of the cattle by appellee from April until the sale of them by the officers in October, save the mere fact that he executed the replevy bond. At no time did he have possession of the cattle. Under this state of the case both of the requested instructions should have been given. We do not see how appellee was entitled to the value of the use of the cattle under the statement of facts, inasmuch as he neither owned them nor had them in possession.

§ 253. *Exemplary damages; when recoverable; rules governing.* Appellant contends that the verdict was erroneous in awarding exemplary damages against him. The facts attendant upon the issuance of the writ by the justice are, substantially, that after appellee had given notice of appeal to the county court, and filed his appeal bond in the cause of Giddens v. Appellee, the attorney for Giddens discovered the appeal bond to be insufficient in amount, and he immediately applied for and obtained the writ of restitution upon the idea that jurisdiction had not attached to the county court, but was still in the justice court. It was also urged that, inasmuch as the replevy bond given by appellee was fatally defective, the justice had the authority to issue the writ, and restore the cattle to Giddens. Appellant, after an investigation of the matter, finally decided to and did issue the writ. Upon this state of the case the jury awarded exemplary damages. While appellant may not have been authorized to issue the writ, still there was manifested no spirit on his part of malice, fraud or corruption. "If a tort be committed through mistake, ignorance or mere negligence, the damages are limited to the actual injury received; but if the defendant act maliciously, wilfully, or with such gross negligence as to indicate a wanton disre-

gard of the rights of others, the jury are not confined in assessing damages to compensation, but may give damages as a punishment to the defendant, called exemplary, punitive or vindictive damages." [5 Amer. & Eng. Enc. Law, pp. 21, 22.] A tort committed by mistake, in the assertion of a supposed right, or without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of punitive damages. [1 Suth. Dam., 724; Kolb v. O'Brien, 86 Ill. 210; Hamilton v. Railroad Co., 53 N. Y. 25; Railway Co. v. Kelly, 31 Pa. St. 372; Snow v. Grace, 25 Ark. 570; Wanamaker v. Bowes, 36 Md. 42; Phelps v. Owens, 11 Cal. 22; Railway Co. v. Finney, 10 Wis. 388; Allison v. Chandler, 11 Mich. 542; Goetz v. Ambs, 27 Mo. 28.] In California, punitive damages were not allowed for seizure under execution of the property of a stranger, not wilfully or wantonly taken. [Phelps v. Owens, 11 Cal. 22.] Exemplary damages were not allowed in Wisconsin, where the process of the court was used improperly, but in good faith. [Beveridge v. Welch, 7 Wis. 465.] In Iowa it was held that, in order to justify the assessing of exemplary damages, it must be made to appear that the act complained of was a wilful or malicious wrong; and an instruction to the effect that the defendants were liable for exemplary damages, if they, when they committed the acts, had good reason to believe they were wrongful, was held erroneous. [Inman v. Ball, 65 Iowa, 543.] In Kansas it is held that, if a sheriff or other officer makes a wrongful seizure of goods under an order of attachment, but acts without fraud, malice, oppression or other improper motive, he is not liable therefor in vindictive or exemplary damages, on account of the malicious motives of the plaintiff in the writ. [Dow v. Julien, 32 Kan. 576.] To obtain judgment for exemplary damages, something more must be shown than a "mere disregard for the rights of others," which is involved in every trespass, except those committed in honest mistake,

or by accident, or possibly by misadventure. [Wilkinson v. Searcy, 76 Ala. 176; Kelly v. McDonald, 39 Ark. 387.]

In this state, before exemplary damages will be awarded, some actual damage must be shown arising from the party complained of to the party complaining, and the tort must be committed deliberately, recklessly, or by wilful negligence, with a present consciousness of invading another's rights, or of exposing him to injury, in order to justify the finding of exemplary damages. An officer is not liable for exemplary damages who in a proper manner and in good faith seizes property under a writ which he holds, but it would afford him no protection if he should wilfully use such process to accomplish a purpose forbidden by law. [Cone v. Lewis, 64 Tex. 331.] "There is no element of exemplary damages in this case." There is not a word of testimony that manifests that appellant was actuated by malice towards appellee; there was no disposition shown on his part to harass or oppress appellee. The mere issuance of the writ of restitution, under the circumstances detailed, does not indicate either malice, corruption, fraud or gross negligence. While he may have been incorrect in his view of the law as to his authority and duty with reference to the issuance of the writ, yet that fact would not authorize a finding against appellant for punitory damages. To authorize a verdict for exemplary damages there must be something more shown than mere mistake as to the legal conclusion, even where the act complained of is the act of a ministerial officer. Mistake of law will not excuse, perhaps, the act of a ministerial officer; yet that mistake, being an honest one, unconnected with fraud, malice or gross negligence, will not form the basis, nor constitute the predicate, for punitory damages. It is also insisted that appellee is not entitled to any sum in damage, because no injury is shown. If the act was a judicial one, then no action would lie against the justice, and the appellee could not recover. [Rains v. Simpson,

50 Tex. 495; Bish. Non-Cont. Law, §§ 779–783 and notes; Field, Dam., § 760; Cooley, Torts, 403 et seq.] It is not necessary to decide this question in order to dispose of this case. Admitting the issuance of the writ to have been a ministerial and not a judicial act, and by reason of that admission the appellee was entitled to nominal damages, still there remains a fundamental proposition to be met, and it is this: The allegations and proof must correspond with the verdict and judgment, as entireties, or they would be wrong. Appellee alleged the wrongful taking of his cattle from his possession. This is a case of tort or trespass. In such cases a party is not entitled to recover damages for more than the interest he possesses or represents in the property which was the subject of the trespass. "The plaintiff must have the actual possession, or a present right of possession, when the trespass was committed, in order to maintain this action." [3 Suth. Dam., § 473, and note 3.] The value of appellee's recovery must depend upon the quantity of the interest he possessed or had in the property at the time of the levy, and this must depend upon the proof of his ownership and possession at that time. If he had neither the ownership nor the title, he could not recover anything as damage for levying the writ upon the cattle, because he predicated his entire case upon concurrence of ownership and possession of the seized property at the time of the levy. Without collating the facts again, it will be borne in mind that appellee had parted with both title and possession, and the cattle had passed into the hands of another, and were so in his possession when levied on, and even when the writ issued. We have no evidence in the record authorizing the verdict for exemplary damages, and, while actual damages might have been awarded had the cattle been taken from his possession, yet the facts do not justify the conclusion that the cattle were in appellee's possession, or were his property,

in such manner as to support the verdict for the actual damages awarded. For the errors indicated the judgment is reversed and the cause is remanded.

May 20, 1891.　　　　　　Reversed and remanded.